**OPINION ON REHEARING**

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 98-4402

GREGORY J. SMITH,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-96-654-DWS)

Submitted: April 13, 1999

Decided: April 27, 1999

Before WIDENER and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

Langdon D. Long, Assistant Federal Public Defender, Columbia,
South Carolina, for Appellant. J. Rene Josey, United States Attorney,
Marshall Prince, Assistant United States Attorney, Christopher W.
Seybolt, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case is before the court on the government's petition for rehearing of our earlier decision affirming the sentence appealed in part, vacating in part, and remanding for resentencing. We grant the petition and modify our earlier decision by directing the district court to impose sentence within the guideline range of 235-293 months unless it finds that a departure is warranted under U.S. Sentencing Guidelines Manual § 2K2.1, comment. (n.16) (1997).

Under the applicable guideline, § 2K2.1, Smith's offense level including enhancements was 32. Because he was an armed career offender, he was subject to a mandatory sentence of fifteen years (180 months). See 18 U.S.C.A. § 924(e) (West Supp. 1998); USSG § 4B1.4. Under § 4B1.4(b)(3)(A), Smith's offense level was increased to 34, then reduced to 31 for acceptance of responsibility. He was already in criminal history category VI, so the resulting guideline range was 188-235 months. The district court departed to offense level 37 under USSG § 4A1.3, p.s. (Adequacy of Criminal History Category) and under USSG § 5K2.1, p.s., because a death resulted from Smith's illegal possession of a firearm. The resulting guideline range was 360 months to life. The court imposed a sentence of 360 months. We affirmed the criminal history departure but vacated the judgment and remanded for resentencing because death is a factor which is taken into account under § 2K2.1(c) (cross reference to homicide guidelines), and may not support a departure unless the death was somehow atypical. See United States v. Smith, No. 98-4402 (4th Cir. Mar. 9, 1999) (unpublished).

The government asserts two errors in its rehearing petition. First, that the assertion in the panel decision that the death was taken into account even though the sentence was imposed pursuant to § 4B1.4 is erroneous. Second, that the district court found the death atypical

2

by stating that it was unprovoked, unnecessary, and risked the lives of more than one person.

A defendant who is subject to a mandatory minimum fifteen-year sentence under § 924(e) is always sentenced under both the Chapter Two guideline that applies to his current offense and § 4B1.4. If, as in this case, the instant offense is a crime of violence, and the offense level calculated under Chapters Two (offense conduct) and Three (adjustments other than acceptance of responsibility) is less than 34, then § 4B1.4 mandates a special enhancement that increases the offense level to 34.[1]

Under § 2K2.1 (the Chapter Two guideline applicable in this case), since a death resulted from the use of the firearm, the homicide cross reference provisions of § 2K2.1(c)(1)(B) were applicable if they yielded the higher base offense level. Under the referenced homicide provisions, Smith's base offense level was 25 for voluntary manslaughter. Because this was less than the base offense level of 26 under § 2K2.1, the cross reference did not increase Smith's base offense level. With the enhancements provided under § 2K2.1 to account for the fact that the gun was stolen and was used to commit another felony, Smith's offense level increased from 26 to 32.

The district court correctly applied the enhancement mandated by § 4B1.4 and raised Smith's offense level to 34. The court then reduced the base level by three levels for acceptance of responsibility, and acted within its discretion to increase the level by two levels to 33 pursuant to § 4A1.3, properly explaining why a one-level departure would have been inadequate.

The court then departed an additional four levels under § 5K2.1 to account for the victim's death. Looking narrowly to the terms of § 4B1.4(b)(3)(A), it is indeed correct that the offense level is set at 34 regardless of whether a death did or did not occur. However, the significance of the death that occurred during the commission of the fire-

---

[1] If the defendant is a career offender, see USSG § 4B1.1, and that offense level is higher than the offense level calculated under Chapters Two and Three, the career offender offense level will control, and will also be increased to 34 if it is less than 34. See USSG § 4B1.4(b).

3

arms offense for which Smith was found guilty was, indeed, taken into account in the guidelines calculus. This is so because the offense level for armed career criminals was utilized only because it was higher than the applicable base offense level for firearms offenses resulting in a voluntary manslaughter. Thus, the unambiguous structure of the guidelines assigns a higher offense level to an armed career criminal who possesses a firearm in connection with a crime of violence than it assigns to a firearms offender who commits a voluntary manslaughter. Therefore, the guidelines account for the significance of the murder, but reach the conclusion that the offense level for an armed career criminal is more appropriate in this case than one that directly takes the death into account.

The government's citation to United States v. Van Metre, 150 F.3d 339 (4th Cir. 1998), is of little assistance here because it simply adheres to the general principle that a departure is only justified if a significant factor is not taken into account by the applicable guidelines. In Van Metre, this Court held that a departure under § 5K2.1 based on the death of the kidnapping victim was permissible because the 1990 version of the kidnapping guideline, § 2A4.1, did not take into account the victim's death unless the defendant kidnapped the victim for the purpose of killing her, which was not the case in Van Metre. See Van Metre, 150 F.3d at 356.

However, the commentary to § 2K2.1 provides that an upward departure may be warranted if "the offense posed a substantial risk of death or bodily injury to multiple individuals." USSG § 2K2.1, comment. (n.16). In explaining the extent to which it intended to depart, the district court found that "the defendant's conduct was extremely dangerous in that the defendant shot a firearm into a crowd of people in a public parking lot."[2]

We therefore direct the court to consider on remand whether a departure may be warranted under Application Note 16 to § 2K2.1. We express no opinion as to the merits of a departure on this ground. We dispense with oral argument because the facts and legal conten-

---

[2] The court referred to § 2K2.1 during this discussion, but later clarified its comment, noting that it had misspoken, and that it was departing under § 5K2.1.

4

tions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED

5